# RE APPLICATION OF GORHAM MANUFACTURING COMPANY.

TRADEMARKS; ENGLISH HALL MARKS; INSIGNIA OF FOREIGN NATION.

1. British statutes, certified to, concerning standards for sterling silver, and establishing assay offices for the certification thereof by certain emblems, and standard publications giving the history of the English hall marks, may be considered by the Commissioner of Patents in passing on an application for registration of insignia for silver. (Following *Re Drawbaugh,* 9 App. D. C. 219.)

2. The emblems, particularly the lion, prescribed by British statutes for the certification of sterling silver by assay offices, are insignia of Great Britain, within the provision of the trademark act of Congress denying registration to any mark comprising the flag or coat of arms or other insignia, or any simulation thereof, of any foreign nation. (Citing *Re Cahn,* 27 App. D. C. 173; *Re American Glue Co.* 27 App. D. C. 391; *Re William Connors Paint Mfg. Co.* 27 App. D. C. 389.)

No. 873. Patent Appeals. Submitted November 14, 1913. Decided December 2, 1913.

HEARING on an appeal from a decision of the Commissioner of Patents denying registration of a trademark. *Affirmed.*

The COURT in the opinion stated the facts as follows:

The Gorham Manufacturing Company appeals from the refusal of registration of a trademark for solid and sterling silverware.

The mark consists of the following emblems stamped upon the ware: A lion passant inclosed in a hexagonal figure; an anchor within the outline of a shield; and the letter G in old English type inclosed in a hexagonal figure. These are arranged in a row beginning with the lion and ending with the G.

It appears that the British government protested against
the registration because of its practical identity with the hall
mark of the Birmingham Assay office.

In support of its protest it furnished the Commissioner of
Patents with certified copies of British statutes from the time
of Edward I. to the reign of Queen Victoria, relating to the
establishment of a standard for sterling silver, of public assay
offices for the certification thereof, and providing certain
emblems to be stamped on the silver assayed. Certain publica-
tions were also presented which give the history of the English
hall marks and certain illustrations of the same.

*Mr. E. T. Fenwick, Mr. L. L. Morrill,* and *Mr. Hugo Mock*
for the appellant.

*Mr. Webster S. Ruckman* for the Commissioner of Patents.

*Mr. Eugene C. Brown* for the British Government.

Mr. Chief Justice SHEPARD delivered the opinion of the
Court:

One of the errors assigned is the consideration by the Com-
missioner of the certified copies of the British statutes and the
standard publications referred to. There was no error. *Re
Drawbaugh,* 9 App. D. C. 219, 240, 257. That was the case of
an application for a patent; but the reasoning applies with equal
force in the case of an application for the registration of a
trademark.

The history of the course of the application and the pro-
ceedings in the Patent Office need not be related. A number
of questions have been argued relating to the common-law
right of applicant to the trademark, the question of deception,
and others, which it is unnecessary to consider.

Since A. D. 1300, British statutes have been in force regu-
lating the standard of solid or sterling silver, and providing
certain public assay offices for testing the purity of silverware,

and certifying thereto. All ware tested at any of these offices must bear the official stamp, which is the figure of a lion. Each office is distinguished by a particular emblem, which, in the case of the Birmingham office, is the anchor. In addition it must bear the stamp of certain letters indicating the year of the test. The letter G stands for A. D. 1831. The chief feature of the stamp is the figure of the lion that stands for sterling silver; the anchor and the date letter standing, respectively, for the office of assay and the year, are of minor importance.

The lion stamp assures every purchaser that the ware is sterling.

The expediency of such marking is apparent. The stamped figures or emblems are official.

Trademarks were recognized by the common law and are acquired by use. Property therein, and the right to exclusive use, rest on the laws of the states. Trade-Mark Cases, 100 U. S. 82, 92, 25 L. ed. 550, 551. The trademark act of Congress, approved February 20, 1905, merely permits registration of certain trademarks used in foreign commerce, or among the several States, or with Indian tribes, under certain conditions. Registration under the act is declared prima facie evidence of ownership (sec. 10); and by complying with certain regulations as to filing in the Department of the Treasury of the United States, foreign goods bearing the like mark or a simulation thereof may be denied entry at any customhouse of the United States. Whether a trademark of any description may be acquired as a right of property by the common law prevailing in any State of the Union presents a question with which we are not concerned in the present case. The question here is whether the trademark claimed by the applicant is entitled to registration by the terms of the trademark act of Congress.

Section 5 of that act denies registration to any mark whatever that "consists of or comprises the flag or coat of arms or other insignia of the United States, or any simulation thereof, or of any State or municipality, or of any foreign nation." [33 Stat. at L. 725, chap. 592, U. S. Comp. Stat. Supp. 1911,

p. 1461.]  If the mark is of the character described, its registration is prohibited, notwithstanding it may have been in use as a trademark for more than ten years next preceding the passage of the act. *Re Cahn,* 27 App. D. C. 173, 178; *Re American Glue Co.* 27 App. D. C. 391; *Re William Connors Paint Mfg. Co.* 27 App. D. C. 389. In the first of those cases, the mark was a simulation of the great seal of the State of Maryland; in the second, it was a simulation of the great seal of the United States; and in the third, it was a simulation of the seal of the Department of Justice. The marks were not simulations of the flag or coat of arms of either the State of Maryland or the United States, but were of part of their insignia. Applying the doctrine of the cases cited, the Commissioner held that the mark in this case consisted of or comprised the insignia of Great Britain, and for that reason, among others, denied registration.

We are of the opinion that he was right in this conclusion. The lion particularly is a part of the insignia of the British government. It was adopted by statute as the mark of purity for all silverware, and is the governmental certificate of sterling fineness. Insignia are distinguishing marks of authority, office, or honor. See Webster's New International Dictionary, where illustrations are given of the various emblems of the United States Army, as insignia.

The official emblem of the British Assay Office is as much a part of that nation's insignia as are these army emblems or the seals of departmental offices of the United States. If necessary the language of the act should be given a liberal construction in aid of the sound public policy which it declares.

The decision is affirmed, and this decision will be certified to the Commissioner of Patents.                    *Affirmed.*